IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| MICHAEL PURCELL, individually and as Personal Representative of the Estate of Christopher Lee Purcell, deceased<br><br>      Plaintiff,<br><br>   v.<br><br>UNITED STATES OF AMERICA,<br><br>      Defendant. | No. 09 C 6137<br><br>Judge Joan H. Lefkow |

**OPINION AND ORDER**

Michael Purcell ("Purcell"), the personal representative of the estate of Christopher Lee Purcell ("Christopher"), filed a complaint for wrongful death against the United States of America under the Federal Tort Claims Act ("FTCA"), 28 U.S.C. §§ 1346(b), 2671-2680. Before the court is the motion of the United States to dismiss for lack of jurisdiction pursuant to Federal Rule of Civil Procedure 12(b)(1), claiming that the action is barred under the doctrine established in *Feres* v. *United States*, 340 U.S. 135, 71 S. Ct. 153, 95 L. Ed. 152 (1950), that the government is not liable under the FTCA for injuries to servicemen arising out of or in the course of activity incident to military service. For the following reasons, the motion [#11] is granted.

## BACKGROUND

At the time of his death, Christopher, a twenty-one year old Navy Hospital Corpsman, was on active duty at the Brunswick Naval Air Station. Exs. 2, 4 to Def.'s Mem.[1] On January 27, 2008, Department of Defense Police Officers Shawn Goding and Matthew Newcomb, followed by Department of Defense Patrolman Francis Harrigan and Petty Officer First Class David Rodriguez, responded to a call that Christopher had a gun and planned to kill himself. Compl. ¶¶ 7-8. Christopher was in his barracks on the base. Ex. 4 to Def.'s Mem. Rodriguez searched the premises and found an empty gun case and bullets on top of the television but no weapon. Compl. ¶ 9. None of the officers present at the scene searched Christopher to see if he had a gun on his person. *Id.* ¶ 15. Rodriguez suggested to Christopher that they talk outside, and he responded calmly. *Id.* ¶ 10. Once outside, Petty Officer First Class Mitchell Tafel approached Rodriguez and informed him that they needed to take Christopher into custody. *Id.* When the officers told Christopher that he would have to be put in restraints, he became irate and non-compliant. *Id.* ¶ 11. A struggle ensued, during which Rodriguez, Tafel, Harrigan, Goding, and Robinson subdued Christopher. *Id.* They handcuffed Christopher and escorted him back to his room. *Id.* Once upstairs, Tafel gave Christopher permission to use the bathroom and instructed Robinson to remove a handcuff. *Id.* ¶¶ 12-14. Christopher proceeded to the bathroom accompanied only by his friend Nathan Mutschler, pulled a gun from his waistband, and shot himself in the chest. *Id.* ¶ 16. The officers involved in the incident were later court-martialed. Pl.'s Resp. at 13.

---

[1] The court may rely on material outside of the complaint when ruling on a motion to dismiss for lack of subject matter jurisdiction. *Sapperstein* v. *Hager*, 188 F.3d 852, 855 (7th Cir. 1999).

On January 8, 2009, Purcell filed an administrative tort claim with the Department of Defense and Department of the Navy, seeking $45 million in damages. Compl. ¶ 18; Ex. 1 to Def.'s Mem. The claim was rejected on June 25, 2009 on the grounds that it was not cognizable under the FTCA. Ex. 4 to Def.'s Mem. Purcell filed this suit, alleging that the officers present were negligent in failing to search Christopher for a weapon and for a number of other acts and omissions that violated relevant Navy procedure. Compl. ¶ 17.

## LEGAL STANDARD

The court treats dismissal under *Feres* as dismissal for lack of subject matter jurisdiction under Federal Rule of Civil Procedure 12(b)(1). *Smith* v. *United States*, 196 F.3d 774, 776 n.1 (7th Cir. 1999). The burden of proof is on the party asserting jurisdiction. *United Phosphorus, Ltd.* v. *Angus Chem. Co.*, 322 F.3d 942, 946 (7th Cir. 2003). In determining whether subject matter jurisdiction exists, the court must accept all well-pleaded facts alleged in the complaint and draw all reasonable inferences from those facts in the plaintiff's favor. *Sapperstein* v. *Hager*, 188 F.3d 852, 855 (7th Cir. 1999). "Where evidence pertinent to subject matter jurisdiction has been submitted, however, 'the district court may properly look beyond the jurisdictional allegations of the complaint . . . to determine whether in fact subject matter jurisdiction exists.'" *Id.* (quoting *United Transp. Union* v. *Gateway W. Ry. Co.,* 78 F.3d 1208, 1210 (7th Cir. 1996)).

## ANALYSIS

**I.    The FTCA and the *Feres* Doctrine**

The FTCA waives the sovereign immunity of the federal government under circumstances where the government would be liable under the law of the state where the injury

3

occurred if it were a private individual. 28 U.S.C. § 1346(b). The statute contains a number of exceptions, including one for injuries resulting from combatant activities of the military during wartime. 28 U.S.C. § 2680. In three cases decided together known as *Feres*, the Court interpreted § 1346(b) as extending beyond combatant activities to injuries to service members "that arise out of or are in the course of activity incident to service," (in the *Feres* cases, a dangerous condition in barracks and medical malpractice). 340 U.S. at 146. The Supreme Court expressed three rationales for extending the exception in *Feres*: first, it is impossible for a court to hold the military liable as it would a private individual in similar circumstances because no private individual has powers and responsibilities remotely analogous to the military, *id.* at 141; second, the relationship between a soldier and the military is "distinctively federal in character," such that it would not make sense to apply the laws of the state where the soldier happens to be stationed, *id.* at 143; and, third, statutory systems of compensation for injuries to service members make the FTCA redundant, *id.* at 144. The case before this court is indistinguishable from *Feres* and thus presumably controlled by it.

In *United States* v. *Shearer*, 473 U.S. 52, 57, 105 S. Ct. 3039, 87 L. Ed.2d 38 (1985), the Court extended *Feres* immunity to a tort committed by a service member against a service member while they were off duty and off the military base. Although first ruling on other grounds in favor of the government, the Court recited its holding as follows: "We hold that Congress has not undertaken to allow a serviceman or his representative to recover from the Government for negligently failing to prevent another serviceman's assault and battery." *Id.* at 59. Although acknowledging the *Feres* rationales, the Court rested it decision primarily on the relationship of the service member to the military: "In the last analysis, *Feres* seems best

4

explained by the peculiar and special relationship of the soldier[2] to his superiors, the effects of the maintenance of such suits on discipline, and the extreme results that might obtain if suits under the Tort Claims Act were allowed for negligent orders given or negligent acts committed in the course of military duty." *Id*. at 57 (quoting *United States* v. *Muniz*, 374 U.S. 150, 162, 83 S. Ct. 1850, 10 L. Ed. 2d 805 (1963)) (internal quotation marks omitted).

Although the Court stated in *Shearer* that *Feres* immunity "cannot be reduced to a few bright-line rules[,]" 473 U.S. at 57, later cases suggest quite the contrary. They demonstrate the Court's intention to grant broad immunity to the United States from suits brought by military personnel. In *United States* v. *Johnson*, for example, the Court held (over a strongly worded dissent by four justices) that the government was immune where the service member's injury arose from conduct of a civilian employee of the government. The Supreme Court relied in its reasoning as in *Feres* on the "distinctly federal" relationship between the government and members of the armed forces and the existence of generous statutory disability and death benefits for service-related injuries, 481 U.S. 681, 689, 107 S. Ct. 2063, 2068 (1987), as well as *Shearer*'s statement that, if this type of claim were generally permitted, it "would involve the

---

[2] The Court did not specify whether "soldier" was the tortfeasor soldier or the deceased soldier for whose estate the law suit had been brought, but its policy analysis focused on the imprudence of second-guessing military decisions, such as whether it had exercised sufficient control over the wrongdoer soldier. *See* 473 U.S. at 58. *But see Johnson* v. *United States*, 481 U.S. 681, 689, 107 S. Ct. 2063, 95 L. Ed. 2d 648 (1987) ("An examination of [the] reasons for the [*Feres*] doctrine demonstrates that the status of the alleged tortfeasor does not have the critical significance ascribed to it by the Court of Appeals in this case."); *Smith* v. *United States*, 196 F.3d 774, 777 (7th Cir. 1999) ("The dispositive inquiry [is] whether the service-member stand[s] in the type of relationship to the military at the time of his or her injury that the occurrences causing the injury arose out of activity incident to military service." (second alteration in original) (quoting *Stephenson* v. *Stone*, 21 F.3d 159, 162 (7th Cir. 1994) (internal quotation marks omitted)).

5

judiciary in sensitive military affairs at the expense of military discipline and effectiveness." *Id.* at 689-91, 107 S. Ct. 2063, 95 L. Ed. 2d 648 (1987).

The Seventh Circuit has not distinguished any of the Supreme Court cases in a manner suggesting the rule is not virtually absolute. *See Smith* v. *United States*, 196 F.3d 774, 777 (7th Cir. 1999) ("We hold only that Congress has made it clear that an FTCA action, in which the service member seeks damages from the United States and necessarily calls into question the management decisions of those who exercise military leadership, is not the appropriate avenue for a wronged service member seeking redress for such a grave wrong."); *Maas* v. *United States*, 94 F.3d 291, 295 (7th Cir. 1996) ("Application of the *Feres* doctrine does not depend on the extent to which its rationales are present in a particular case."); *Selbe* v. *United States*, 130 F.3d 1265, 1268 (7th Cir. 1990) (applying *Feres* in an instance of medical malpractice at a military hospital, "notwithstanding the tenuous link between these rationales and malpractice cases").

## II. *Feres* Applied to Christopher Purcell's Death

Even if the rationales of *Feres* are applied, the result is the same. Christopher's death occurred while he was an active duty service member in his barracks on a military base. As was the injured soldier in *Feres*, Christopher was under military discipline and jurisdiction. Military officers, not local law enforcement, responded when notified that he posed a threat to his own safety. Therefore, at the time of his death, Christopher stood in the type of relationship to the military that indicates that his injuries were incident to military service. Furthermore, the allegedly negligent officers in this case were acting pursuant to military duties and according to military regulations. To inquire into the conduct of these officers under these circumstances would implicate the concerns about interference with military discipline underlying *Shearer*. As

in that case, "[t]his allegation goes directly to the 'management' of the military; it calls into question basic choices about the discipline, supervision, and control of a serviceman." 473 U.S. at 58. The negligent officers involved here were court-martialed, underscoring the authority of the military judicial system over this case.

Purcell argues that *Feres* should not apply because Christopher was off duty, he was "performing a non-military activity in what was essentially a civilian context," and he was "not subject in any real way to the compulsion of military orders or performing any sort of military mission." Pl.'s Resp. at 8-9. These arguments do not comport with Supreme Court and Seventh Circuit precedent, which have applied the doctrine regardless of whether a service member's activities at the time of the injury are "non-military" in nature, or whether the service member is off duty or off base. *See also, e.g.*, *Smith*, 196 F.3d at 776 (applying *Feres* when an off-duty service member was sexually assaulted by her superior officer at an off-base hotel); *Rogers* v. *United States*, 902 F.2d 1268 (7th Cir. 1990) (*Feres* applied where the plaintiff had been living for years as a civilian – although due to an administrative mistake he had never been formally discharged – was injured while detained in a military brig for two months as a deserter); *Walls* v. *United States*, 832 F.2d 93, 95-96 (7th Cir. 1987) (applying *Feres* when a service member was injured while participating in a recreational flight club established by the Air Force).

Purcell further contends that the rationales expressed in *Johnson* do not support the application of *Feres* to this case, but his argument mischaracterizes the rationales. First, he argues that Christopher's federal relationship with the Navy was "only partially implicated when he died" because "he was being taken into police custody in the same way any other citizen would be." Pl.'s Resp. at 10-11. The distinctively federal nature of the relationship between a

7

service member and the military weighs against the application of state law to military liability. *Feres*, 340 U.S. at 142-143. This concern remains valid even if the service member's specific activity at the time of his injury does not directly involve the federal relationship. Next, Purcell points out that the family did not receive compensation through the Navy's administrative claim process. Pl.'s Resp. at 11. It is the existence of a compensation system, however, not the outcome of a particular administrative claim, that supports the application of *Feres* in civilian court. *See Johnson*, 481 U.S. at 690. Third, Purcell argues, "[i]n the present case, there is no question of management of the military or the relationship between soldiers and their superiors." Pl.'s Resp. at 12. As stated above, the negligence of military officers is a question of military management and discipline, and therefore the province of military courts. *See Shearer*, 473 U.S. at 58.

The court does not minimize the personal tragedy plaintiff and others close to Christopher have suffered, but because the court concludes that the *Feres* doctrine applies to this case, it lacks subject matter jurisdiction to grant any relief.

## **CONCLUSION AND ORDER**

For the foregoing reasons, the United States' motion to dismiss [#11] for lack of jurisdiction is granted. The case is terminated.

Dated: Oct. 14, 2010  Enter: _____
JOAN HUMPHREY LEFKOW
United States District Judge

8